Filed 8/25/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| CHAD STARKS, | B288005, B292643 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC590955) |
| v. | |
| VORTEX INDUSTRIES, INC., | |
| Defendant and Respondent; | |
| ADOLFO HERRERA, | |
| Movant and Appellant. | |
| | (Los Angeles County Super. Ct. No. BC644313) |
| ADOLFO HERRERA, | |
| Plaintiff and Appellant, | |
| v. | |
| VORTEX INDUSTRIES, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, Richard L. Fruin, Jr., Judge.  Affirmed.

Matern Law Group, Matthew J. Matern, Matthew W. Gordon, Kiran Prasad and Vanessa M. Rodriguez for Movant and Appellant Adolfo Herrera (B288005 & B292643 [Super. Ct. No. BC590955]) and for Plaintiff and Appellant Adolfo Herrera (B288005 & B292643 [Super. Ct. No. BC644313]).

Shenkman & Hughes, Kevin Shenkman; Law Offices of Milton C. Grimes, Milton Grimes; Lawyers for Justice and Edwin Aiwazian for Plaintiff and Respondent Chad Starks (B288005 & B292643 [Super. Ct. No. BC590955]).

Sheppard, Mullin, Richter & Hampton and Ryan D. McCortney for Defendant and Respondent Vortex Industries, Inc. (B288005 & B292643 [Super. Ct. Nos. BC590955 & BC644313]).

————————————

The Labor and Workforce Development Agency (LWDA) is authorized to recover civil penalties from employers for violations of the Labor Code.  Under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.), an employee aggrieved by his or her employer's Labor Code violations may be authorized to act as an agent of the LWDA to recover such penalties in a civil action.  In the cases underlying these consolidated appeals, Chad Starks and Adolfo Herrera, each acting as the LWDA's agent, separately filed substantially identical PAGA actions against their former employer, Vortex Industries, Inc. (Vortex).  Herrera, who filed his PAGA action (the

_____

[1] Unless otherwise specified, subsequent statutory references are to the Labor Code.

2

Herrera action) 16 months after Starks commenced his action (the Starks action), never moved to consolidate the cases and did little to litigate his action.

Starks settled with Vortex. The court approved the settlement and entered judgment thereon. The LWDA thereafter accepted its share of the judgment proceeds. After learning of the judgment, Herrera moved to vacate the judgment and to intervene in the Starks action. The court denied the motions and subsequently granted Vortex's motion for summary judgment against Herrera.

Herrera appealed the denial of his motions in the Starks action and the judgment in his lawsuit. We hold: (1) The trial court did not abuse its discretion when it determined that Herrera's motion to intervene in the Starks action was untimely; and (2) Because the LWDA accepted the proceeds from the judgment in the Starks action, Herrera, as the LWDA's agent, cannot attack that judgment. We also affirm the judgment in the Herrera action.

### FACTUAL AND PROCEDURAL BACKGROUND

Vortex is in the business of repairing and replacing commercial and industrial doors. It employed Starks as a service technician from January 2011 to November 2014, and employed Herrera as a service technician from July 2015 to November 2015.

On June 30, 2015, pursuant to section 2699.3, Starks gave notice to the LWDA and Vortex of his allegations that Vortex violated certain Labor Code requirements, including requirements that employers pay overtime wages (§§ 510, 1198), provide meal and rest periods (§§ 226.7, 512, subd. (a)), timely pay wages during and upon termination of employment

3

(§§ 201-202, 204), provide complete and accurate wage statements and payroll records (§§ 226, subd. (a), 1174, subd. (d)), pay minimum wages (§§ 1194, 1197, 1197.1), and reimburse employees for necessary business expenses (§ 2802). Sparks stated that he intended to recover "on behalf of all aggrieved employees . . . all applicable penalties related to these violations." The LWDA did not respond to the notice.

On August 10, 2015, Starks filed a complaint in the superior court commencing the Starks action. He asserted a single cause of action under PAGA based upon allegations that Vortex failed to comply with the Labor Code requirements specified in his notice to the LWDA. The case was assigned to Judge Richard L. Fruin.

On December 1, 2016, the court issued an order bifurcating the trial in the Starks action. The first phase would determine whether Starks is an "aggrieved employee" under PAGA.[2] The second phase would determine whether there are other aggrieved employees and the amount of civil penalties.

Meanwhile, on October 11, 2016, Herrera gave notice to the LWDA and Vortex of his intention to sue Vortex based upon allegations of Labor Code violations similar to those Starks had previously alleged. The LWDA did not respond to Herrera's notice.

On December 16, 2016, Herrera filed his complaint, commencing the Herrera action, alleging a single cause of action under PAGA, based upon the violations of the Labor Code

---

[2] Section 2699, subdivision (c) defines an "aggrieved employee" for the purposes of PAGA as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed."

4

requirements he had alleged in his notice.  The Herrera action was initially assigned to Judge Monica Bachner.

In January 2017, Vortex filed a demurrer seeking a stay of the Herrera action on the ground that there was another action pending—the Starks action—and that a stay was proper under the rule of exclusive concurrent jurisdiction.  (See Code Civ. Proc., § 430.10, subd. (c).)  The court rejected these arguments and denied the request for a stay.

On March 17, 2017, Vortex filed in both the Herrera and Starks actions notices that the actions are related cases pursuant to rule 3.300 of the California Rules of Court.  The court thereafter declared the two cases related and reassigned the Herrera action to Judge Fruin.  The court noted that its order was without prejudice to the parties filing a motion to consolidate the actions.  Herrera did not file a motion to consolidate.  Nor does it appear from our record that Herrera litigated his case beyond propounding some initial discovery, while the parties in the Starks action conducted discovery and proceeded to trial.

During five days in July 2017, the court conducted the first phase of the bifurcated trial in the Starks action and found that Starks is an aggrieved employee for purposes of PAGA.

On September 27, 2017, the court held a case management conference in the Herrera action.  During the conference, counsel for Vortex stated that Starks and Vortex were engaged in settlement discussions and that "Herrera is encompassed in the non-party employees that Starks . . . represents in the Starks action."  Vortex's counsel also expressed his agreement with the court's statement that a settlement in the Starks action "has implications to the Herrera case."  Nevertheless, Herrera's counsel gave no indication that Herrera would move

5

to consolidate the two cases or intervene in the Starks action. The court, over Herrera's objection, ordered the Herrera action stayed until November 1, 2017, and set a further conference for that date.[3]

On October 2, 2017, Starks and Vortex participated in a mediation, which resulted in a written settlement agreement conditioned upon the court's approval. According to the agreement, Vortex agreed to an aggregate settlement amount of $675,000, allocated as follows: $630,000 of the settlement amount "shall be regarded as" Starks's counsel's attorney fees and costs; $25,000 is "attributable to the representative PAGA claim"; $10,000 is "designated as the portion . . . attributable to the Labor Code section 558 penalties/wages"; and $10,000 is allocated to Starks as a "plaintiff representative service award." Of the $25,000 allocated to the PAGA portion, Vortex would pay $18,750 to the LWDA within 15 days of the court's approval of the settlement; the remainder (i.e., $6,250), as well as the entirety of the portion attributable to section 558 (i.e., $10,000), would be paid within 45 days of the court's approval to Vortex's "current and former service technicians, employed by [Vortex] at any time during the time period of June 30, 2014 through the date of court approval of the settlement." The settlement agreement included a release of civil claims against Vortex for penalties under PAGA.

---

[3] The only order imposing a stay in the Herrera action, so far as our record reveals, is dated September 27, 2017. Although a partial and temporary discovery stay was ordered in the Starks action prior to the filing of Herrera's complaint, it did not apply to the Herrera action.

6

On October 5, 2017, Starks's counsel provided a copy of the settlement agreement to the LWDA.  The LWDA did not object to the agreement.

On October 12, 2017, Vortex and Starks filed a joint ex parte application for court approval of the settlement agreement.  They did not give notice of the application or a copy of the settlement agreement to Herrera or any other aggrieved employee of Vortex.  At the hearing on the application, the court accepted the parties' stipulation that Herrera "need not be notified of settlement at this time."  The court instructed the parties to file additional declarations and set a further hearing for October 18, 2017.

During the October 18, 2017 hearing, the trial court directed Starks to file a first amended complaint and Vortex to file an answer thereto.[4]  A minute order concerning the hearing states that "[t]he case is settled" and that the court intended to sign and file a proposed order and judgment approving the settlement agreement.

On October 24, 2017, the trial court issued an order and judgment approving the settlement agreement (the Starks judgment), thereby terminating the action.  Herrera was not given notice of the order or judgment.  The Starks judgment incorporated by reference the "terms and conditions" of the settlement agreement and "direct[ed] the implementation of all remaining terms, conditions, and provisions" of the settlement agreement.  It further provided that the settlement agreement "shall be binding on all [a]ggrieved [e]mployees and the State of

---

[4] The first amended complaint Starks filed thereafter added a claim for civil penalties under section 558, but was otherwise identical in all material respects to his prior complaint.

7

California, who are hereby barred from re-litigating" the claims released in the settlement agreement.

At the continued case management conference held on November 1, 2017, Herrera's counsel informed the court that he had learned of the settlement in the Starks action on October 24, 2017, by "checking the [court's] docket." During the hearing, the court lifted the stay in the Herrera action.

By check dated November 7, 2017, Vortex paid the LWDA the amount of $18,750 due to it under the judgment. The LWDA cashed the check sometime prior to December 13, 2017.

On November 9, 2017, Herrera filed a motion to vacate the Starks judgment pursuant to Code of Civil Procedure section 663.[5] Herrera asserted he had standing to make the motion because the judgment in the Starks action "materially affects" his "substantial rights . . . in that it purportedly has a preclusive effect on his claims under [PAGA]" and his "right to enforce the California Labor Code."

On November 13, 2017, Herrera filed a motion to intervene in the Starks action pursuant to Code of Civil Procedure section 387.[6] In support of the motion, Herrera submitted a proposed complaint in intervention asserting a single cause of

_____

[5] Herrera also moved for a new trial, which the court denied. Herrera does not challenge that ruling.

[6] Herrera states in his reply brief that he filed his motion to intervene three days before the Starks judgment was entered. His citations to the record, however, show that he is referring to the filing of a notice of entry of the judgment on November 16, 2017, not the judgment, which was entered on October 24, 2017. Herrera's motion to intervene was filed approximately three weeks *after* the entry of the judgment.

action under PAGA and generally mirroring the complaint filed in the Herrera action.

On December 8, 2017, a third party administrator issued and mailed to each "aggrieved employee" under the Starks settlement a check for that employee's portion of the Starks judgment proceeds.

On December 13, 2017, during the hearing held on Herrera's motions, Starks's counsel introduced evidence that the LWDA had cashed the check representing the state's portion of the proceeds from the Starks judgment. After argument, the court denied both motions.

On December 14, 2017, the check issued to Herrera in the amount of $33.30 cleared. According to Herrera, his wife cashed the check without his knowledge or endorsement. Herrera has not returned the funds or placed them in a trust account, but, in opposition to a motion to dismiss his appeal, he stated that he is "ready, willing and able to return the $33.30 to Vortex in order to pursue [his] appeal."

On February 2, 2018, Herrera appealed the Starks judgment and the trial court's orders denying his motions to intervene and to vacate the judgment in the Starks action.

On July 13, 2018, the court granted Vortex's motion for summary judgment in the Herrera action. The court explained that the Herrera action is barred by the terms of the settlement agreement and judgment in the Starks action and under the doctrine of res judicata. The court further stated that the Herrera action could not be maintained after Herrera and the LWDA accepted the benefits of the settlement by cashing their respective checks.

9

On August 17, 2018, the trial court entered judgment in favor of Vortex in accordance with its order granting the summary judgment motion. Herrera timely appealed.

On March 4, 2019, this court consolidated Herrera's appeals.

## DISCUSSION

### A. *PAGA Background*

California law provides for civil penalties for violations of certain Labor Code provisions. (See, e.g., §§ 210, subd. (a), 225.5, 226.3, 256, 2699, subd. (f).) Prior to the enactment of PAGA, many of these penalties were " 'enforceable only by the state's labor law enforcement agencies.' " (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 381 (*Iskanian*).) In enacting PAGA, "[t]he Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980 (*Arias*).) PAGA thus "augment[ed] the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the [LWDA]" (*Iskanian*, *supra*, 59 Cal.4th at p. 383) and "deputizing [them] to prosecute Labor Code violations on the state's behalf" (*id.* at p. 360).

Although PAGA empowers an LWDA-deputized employee to prosecute an action on behalf of the state and aggrieved

employees, who share any civil penalties recovered in the action, the law does not create in favor of any employee any "property rights," "substantive rights," or "assignable interest." (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993, 1003; see also *Medina v. Vander Poel* (E.D.Cal. 2015) 523 B.R. 820, 827 [the employee has no claim to the penalties recoverable under PAGA; and the state "alone holds a property interest in them"].) Rather, an authorized PAGA plaintiff "acts as ' "the proxy or agent of the state's labor law enforcement agencies" ' and ' "represents the same legal right and interest as" ' those agencies—' "namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]." ' [Citation.]" (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185 (*ZB*).)

To become an agent of the LWDA for purposes of PAGA, an aggrieved employee must first "notify the employer and the [LWDA] of the specific labor violations alleged, along with the facts and theories supporting the claim. [Citations.] If the agency does not investigate, does not issue a citation, or fails to respond to the notice within 65 days, the employee may sue." (*Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*); see § 2699.3, subd. (a).) Even though an employee is thus authorized to "commence a civil action" under PAGA (§ 2699.3, subd. (a)(2)(A)), the " 'government entity . . . is always the real party in interest' " (*Kim, supra*, 9 Cal.5th at p. 81) and the action "is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government." (*Id.* at p. 86; see also *ZB, supra*, 8 Cal.5th at p. 185 ["[a]ll PAGA claims . . . are brought on the state's behalf"];

*Iskanian*, *supra*, 59 Cal.4th at p. 386 [a PAGA claim "is a dispute between an employer and the *state*"].)

Because a PAGA plaintiff acts "as the proxy or agent of the state's labor law enforcement agencies" and the PAGA action "functions as a substitute for an action brought by the government itself, a judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." (*Arias*, *supra*, 46 Cal.4th at p. 986; see also *ZB*, *supra*, 8 Cal.5th at p. 196 ["[n]onparty employees are bound by the judgment in an action under . . . PAGA, but only with respect to recovery of civil penalties"].) Thus, although courts have held that different aggrieved employees may be deputized by the LWDA to pursue PAGA actions concurrently against the same employer (*Julian v. Glenair, Inc.* (2017) 17 Cal.App.5th 853, 866; *Tan v. Grubhub, Inc.* (N.D.Cal. 2016) 171 F.Supp.3d 998, 1013), a judgment obtained in one action will bar other PAGA actions against the employer under the doctrine of res judicata (*Arias*, *supra*, 46 Cal.4th at p. 986; *Robinson v. Southern Counties Oil Company* (Aug. 13, 2020, A158791) __ Cal.App.5th __ [2020 WL 4696742 at pp.*2–*3]; cf. *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 592 [PAGA action barred by res judicata where plaintiff was a class member in a prior class action in which a PAGA claim could have been asserted and which concluded with a court-approved settlement]).

Seventy-five percent of civil penalties recovered in a PAGA action are paid to the LWDA; the remaining 25 percent is paid "to the aggrieved employees." (§ 2699, subd. (i).) If parties in a PAGA lawsuit agree to settle, the "proposed settlement shall be submitted to the [LWDA]," and the "court shall review

12

and approve [the] settlement." (§ 2699, subd. (*l*)(2).) Although our Supreme Court has stated that this provision ensures that "any negotiated resolution is fair to those affected" (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 549), California courts have not determined the standards by which a trial court reviews and approves a proposed settlement.

## B. *The Trial Court Did Not Err in Denying Herrera's Motion to Intervene*

Three weeks after the court approved the settlement in the Starks action and entered judgment thereon, Herrera filed a motion to intervene in that case. Motions to intervene are governed by Code of Civil Procedure section 387, subdivision (b), which, at the time Herrera filed his motion, provided in pertinent part: "[I]f the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene."[7] (Code Civ. Proc., former § 387, subd. (b); Stats. 1977, ch. 450, § 1, p. 1486.)

Regarding his interest in the subject of the Starks action, Herrera stated that he "has been deputized with the same authority as . . . Starks to pursue his respective claims against

---

[7] Code of Civil Procedure section 387 was amended effective January 1, 2018 in ways that are not material to this case. (Stats. 2017, ch. 131, § 1, pp. 1918–1919; see *Edwards v. Heartland Payment Systems, Inc.* (2018) 29 Cal.App.5th 725, 732, fn. 3.)

Vortex on behalf of the LWDA and other aggrieved employees." He argued that the Starks judgment "impedes his ability to protect that interest" because of the judgment's res judicata effect on his action. He asserted that this interest had not been adequately represented based on the settlement agreement's "disproportionate allocation" of funds to Starks and his counsel. Lastly, Herrera argued that his motion was timely because Starks's alleged inadequate representation did not become apparent until the terms of the settlement were disclosed.

The trial court denied Herrera's motion because, among other reasons, it was untimely. We review that determination for abuse of discretion. (*Lofton v. Wells Fargo Home Mortgage* (2018) 27 Cal.App.5th 1001, 1012–1013; *U.S. v. Alisal Water Corp.* (9th Cir. 2004) 370 F.3d 915, 918 (*Alisal*).) Under this standard, we will not disturb the court's decision "as long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken, . . . even if, as a question of first impression, we might feel inclined to take a different view from that of the court below as to the propriety of its action.' [Citation.]" (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.) Herrera, as the appellant, has the burden of establishing an abuse of discretion. (See *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566; *In re Marriage of Brewster & Clevenger* (2020) 45 Cal.App.5th 481, 500.)

Courts evaluate the timeliness of a motion to intervene based on the totality of the circumstances. (*NAACP v. New York* (1973) 413 U.S. 345, 366; *Legal Aid Soc. of Alameda Co. v.*

14

*Dunlop* (9th Cir. 1980) 618 F.2d 48, 50.)[8]  Courts consider three factors:  (1) the stage of the proceeding when the prospective intervenor moved to intervene; (2) the reason for and length of the delay; and (3) the prejudice to parties to the existing action if intervention is allowed.  (*Alisal, supra*, 370 F.3d at p. 921; accord, *Cal. Dept. of Toxic Substances v. Commer. Realty* (9th Cir. 2002) 309 F.3d 1113, 1119 (*DTSC*).)

The first factor, the stage of the proceedings—here, postjudgment—supports denial of the motion.  Three weeks earlier, the court had approved the settlement and entered judgment.  Although, as Herrera points out, the entry of judgment does not always preclude intervention (*Hernandez v. Restoration Hardware, Inc.* (2018) 4 Cal.5th 260, 267; *Edwards v. Heartland Payment Systems, Inc., supra,* 29 Cal.App.5th at p. 734, fn. 6), filing of the motion at that late stage weighs very heavily against granting it.  (*Noya v. A.W. Coulter Trucking* (2006) 143 Cal.App.4th 838, 842; *Heartwood, Inc. v. U.S. Forest Service, Inc.* (7th Cir. 2003) 316 F.3d 694, 700–701; *County of Orange v. Air California* (9th Cir. 1986) 799 F.2d 535, 538

---

[8]  The pertinent version of Code of Civil Procedure section 387, subdivision (b) was based on rule 24(a) of the Federal Rules of Civil Procedure (28 U.S.C.) and the Legislature "intended it to be interpreted consistently with federal cases interpreting" the federal rule.  (*Hodge v. Kirkpatrick Development, Inc.* (2005) 130 Cal.App.4th 540, 556.)  California courts have thus relied on federal cases interpreting the federal rule.  Reliance on federal authorities is particularly apt in evaluating the timeliness requirement because of the lack of California authorities addressing the issue.  (See *Ziani Homeowners Assn. v. Brookfield Ziani LLC* (2015) 243 Cal.App.4th 274, 280–281 (*Ziani*).)

(*County of Orange*); *Alaniz v. Tillie Lewis Foods* (9th Cir. 1978) 572 F.2d 657, 659 (*Alaniz*).)

As one court explained, "[o]nce settlement efforts are completed and embodied in a final judgment, the parties expect to be able to tailor their future actions and decisions in reliance on that judgment. It follows inexorably that modifying a settlement term can knock the props out from under justifiable reliance of this sort. Moreover, courts have long recognized the systemic benefits of policies favoring the voluntary resolution of disputes." (*Banco Popular de Puerto Rico v. Greenblatt* (1st Cir. 1992) 964 F.2d 1227, 1232 (*Banco Popular*).) Post-settlement "attacks on the terms of a fully consummated settlement disserve these salutary policies, undermining the finality of judicial decrees and depriving the original litigants of choices that were theirs to make." (*Ibid.*)

This rationale applies here. In reliance on the court-approved settlement and judgment, Vortex promptly delivered the judgment proceeds to the LWDA and Vortex's aggrieved employees, which the LWDA and Herrera—and presumably other Vortex employees—have cashed. Herrera's attempt to intervene, vacate the judgment, and void the settlement would, if successful, "knock the props out from" the parties' reliance on the agreement.

A second factor—the reason for and length of the delay— also supports the court's exercise of discretion. Herrera's motion was filed more than two years after the Starks action began, more than eight months after Herrera learned of Starks's lawsuit, and seven months after he could have moved to consolidate the two actions. At the time the court declared the cases related, it indicated that it would consider a motion to

consolidate them. Indeed, in light of the "common question[s] of law [and] fact" in the two cases (see Code Civ. Proc., § 1048, subd. (a)), and the judicial economy of a single proceeding, consolidation was appropriate and, if Herrera had requested it, eminently likely. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2019) ¶ 12.359, pp. 12(1)-68 to 12(1)-69 [in moving to consolidate, the party need only show "that the issues in each case are basically the same, and that 'economy and convenience' would be served by a joint trial"].) Herrera, however, never followed up on this option and offers no explanation for failing to do so. Had he consolidated the cases, he would have received notice of proceedings between Starks and Vortex and had a voice in settlement discussions. Herrera's suggestions that Starks and Vortex should have kept him apprised of events and negotiations in the Starks action but failed to do so, therefore, are attributable to his own lack of diligence.

Herrera attempts to excuse his delay in moving to intervene by asserting that he did not learn of Starks's alleged inadequate representation until the terms of the settlement were disclosed in October 2017. Even if we assume that the settlement terms are unfavorable to the LWDA, "a potential intervenor can[not] sit idly by and await the receipt of infinitely precise information about every ramification of a pending case." (*Banco Popular*, *supra*, 964 F.2d at p. 1231.) Because "[c]omplete knowledge [as to whether an existing party is protecting the potential intervenor's interest] is unlikely to be attained short of final judgment," "the law contemplates that [the potential intervenor] must move to protect its interest no later than when it gains some actual knowledge that a measurable risk exists."

17

(*Ibid.*; see *R & G Mortg. Corp. v. Federal Home Loan Mortg.* (1st Cir. 2009) 584 F.3d 1, 8 (*R & G*) ["[p]erfect knowledge of the particulars of the pending litigation is not essential to start the clock running; knowledge of a measurable risk to one's rights is enough"].)

Because Herrera filed his action after the Supreme Court's decision in *Arias*, he knew or should have known that, if the court entered a judgment in the Starks action prior to a judgment in his action, his action would probably be foreclosed under the doctrine of res judicata. (See *Arias*, *supra*, 46 Cal.4th at pp. 985–986.) Starks's 16-month head start and Herrera's failure to prosecute his PAGA action rendered that outcome highly likely. Although it was possible that the Starks action would settle on terms Herrera would find acceptable, there was certainly a significant risk that Starks would settle his PAGA action on terms that Herrera would find unacceptable. That risk was enough to require Herrera to act to protect his PAGA claim through consolidation or intervention. (See *DTSC*, *supra*, 309 F.3d at p. 1120; see also *R & G*, *supra*, 584 F.3d at p. 8 ["[i]n the last analysis, the timeliness inquiry centers on how diligently the putative intervenor has acted once he has received actual or constructive notice of the impending threat"].)

As we do here, courts have rejected arguments similar to Herrera's. In *County of Orange, supra,* 799 F.2d 535, for example, a proposed intervenor, the City of Irvine, attempted to explain its filing of a post-settlement motion to intervene by arguing that "it did not intervene sooner because it did not know until . . . the date it learned of the proposed [s]tipulated [j]udgment[ ] that its interests were not being adequately represented by the original parties. In other words, this was

18

allegedly the first time that [the City of] Irvine realized that the end result of the protracted litigation would not be entirely to its liking." (*Id.* at p. 538.) The Ninth Circuit rejected the argument because the city "should have realized that the litigation might be resolved by negotiated settlement," the existence of negotiations among the parties had been publicized, and the city "should have contemplated" that the negotiations would be detrimental to its interests and protected itself by intervening sooner. (*Ibid.*)

Similarly, in *Alaniz*, the prospective intervenors waited until after the existing parties entered into a consent decree before seeking to intervene. The prospective intervenors explained that they waited because "they did not know the settlement decree would be to their detriment." (*Alaniz, supra,* 572 F.2d at p. 659.) "But," the Ninth Circuit responded, "surely they knew the risks. To protect their interests, appellants should have joined the negotiations before the suit was settled." (*Ibid.*; cf. *Hernandez v. Restoration Hardware, Inc., supra,* 4 Cal.5th at pp. 264, 272 [appellant class member had the opportunity to intervene in the trial court proceedings during the trial on the merits, but instead "made a strategic choice to wait and see if [appellant] agreed with the settlement amount and attorney fees agreement"].)

In *DTSC, supra,* 309 F.3d 1113, a California state agency, numerous oil companies, and certain landowners were involved in years of litigation that resulted in an "Oil Consent Decree." (*Id.* at p. 1117.) After the consent decree was entered, certain cities sought to intervene and attempted to explain their delay by arguing that "they could not have determined that the Oil Consent Decree would affect their interests or that the [state

19

agency] would not protect their interests until they were notified of the terms of the decree." (*Id.* at pp. 1119–1120.) The Ninth Circuit rejected the argument, stating that " '[a] party seeking to intervene must act as soon as he knows *or has reason to know* that his interests might be adversely affected by the outcome of the litigation.' [Citation.] While [the cities who sought to intervene] were not certain that the consent decree would be adverse to their interests, they had reason to know that negotiations might produce a settlement decree to their detriment. . . . [The c]ities could have intervened sooner to protect themselves from this eventuality [and] should have known that the risks of waiting included possible denial of their motions to intervene as untimely." (*Id.* at p. 1120, boldface omitted.)

Like the prospective intervenors in these cases, Herrera knew or should have known that the Starks action might be resolved by a settlement that would be detrimental to his claim. Because of that risk, he "could have intervened sooner" and should have known that the risks of waiting included the possibility that he would not be satisfied with the judgment. (See *DTSC*, *supra*, 309 F.3d at p. 1120). Indeed, Herrera was informed of pending settlement discussions in the Starks action no later than the case management conference on September 27, 2017, yet he gave no indication of any intent to intervene until after the judgment was entered approximately one month later.

A third factor in evaluating the timeliness of a motion to intervene is the prejudice that results from the prospective intervenor's failure to move for intervention at the earlier appropriate time. (*Smith v. Los Angeles Unified School Dist.* (9th Cir. 2016) 830 F.3d 843, 857; *Stallworth v. Monsanto Co.* (5th Cir. 1977) 558 F.2d 257, 267.) Here, Herrera's late

20

intervention is prejudicial because it would increase the expense and burden on the parties in the Starks action and the already overburdened courts without any assurance that the LWDA would obtain a better result from reopening the case. As the Ninth Circuit stated in *Alaniz*, the judgment "is already being fulfilled; to countermand it now would create havoc and postpone the needed relief." (*Alaniz*, *supra*, 572 F.2d at p. 659.)

For all the foregoing reasons, the court did not abuse its discretion in finding that Herrera's motion to intervene was untimely.

Herrera's reliance on *Ziani*, *supra*, 243 Cal.App.4th 274 is misplaced. In that case, a condominium homeowners association sued the condominium developer alleging construction defects in the development. After the homeowners association announced a settlement, certain homeowners sought to intervene. The court denied the motion on the ground that it was untimely and indicated that the individual homeowners should have sought to intervene "at or about the time the case was filed." (*Id.* at p. 280.) The Court of Appeal reversed, holding that the trial court "used the wrong date as the starting point for determining the timeliness of the [m]otion. The court should have used the date on which [the homeowners] knew or should have known their interests in this litigation were not being adequately represented by the homeowners association, not the date on which [they] knew or should have known about this litigation." (*Id.* at p. 282.) The court directed the trial court to make a factual finding as to when the moving parties "knew or should have known their interests in this litigation were not being adequately represented by the homeowners association, and then to reconsider the

timeliness of the [m]otion, using that date as the starting point for the timeliness analysis." (*Id.* at p. 283.)

*Ziani* does not hold that prospective intervenors can wait, like Herrera did, until a settlement in the existing action has been announced before filing a motion to intervene. Indeed, had that been the court's conclusion, there would have been no need to direct the trial court to make a factual finding on remand concerning the point when the homeowners knew or should have known that their interests were not being adequately represented. That point, the court's direction implies, may have occurred well before the announcement of the settlement. Nothing in our holding or analysis conflicts with *Ziani*.

### C. *Appeal From the Orders Denying Herrera's Motion to Vacate the Starks Judgment is Barred by the State's Acceptance of the Starks Judgment Proceeds*

Although Herrera was never a party in the Starks action, he asserted that he had standing to file a motion to vacate the Starks judgment because he is aggrieved by that judgment. He is aggrieved, he argued, because the judgment in the Starks action "effectively undercut" his PAGA claim and "materially affected [his] substantial interest and right to enforce the California Labor Code." On appeal, he argues further that, as "an aggrieved employee and proxy for the [s]tate, [he] should have been permitted to move . . . to vacate the judgment in the Starks matter." (Italics omitted.)

Starks argues that Herrera cannot challenge the judgment in his case because the LWDA was provided with a copy of the settlement agreement, failed to object to the settlement, and

22

instead accepted the benefits of the judgment when it cashed the check for its full share of the settlement proceeds. We agree.

Generally, "one who *accepts* the *benefits* of a judgment cannot thereafter attack the judgment by appeal." (*Lee v. Brown* (1976) 18 Cal.3d 110, 114 (*Lee*); accord, *Schubert v. Reich* (1950) 36 Cal.2d 298, 299; *San Bernardino v. Riverside* (1902) 135 Cal. 618, 620.) As our Supreme Court explained in an early case, "[t]he right to accept the fruits of a judgment, and the right of appeal therefrom are not concurrent. On the contrary, they are totally inconsistent. An election to take one of these courses is, therefore, a renunciation of the other." (*Estate of Shaver* (1900) 131 Cal. 219, 221.)

Starks filed and maintained the Starks action on behalf of the LWDA and solely in his capacity as a " 'proxy or agent' " of the LWDA. (See *Iskanian*, *supra*, 59 Cal.4th at p. 380; *Arias, supra,* 46 Cal.4th at p. 985.) His lawsuit was thus "an enforcement action between the LWDA and the employer" (*Kim*, *supra*, 9 Cal.5th at p. 86), and the LWDA was "always the real party in interest" (*Iskanian*, *supra*, 59 Cal.4th at p. 382). When the LWDA received the settlement agreement and cashed the check for its portion of the proceeds pursuant to the Starks judgment, it thereby accepted the benefits of the judgment and, so far as our record shows, did so unconditionally and without objection.[9] (Cf. *Besco Enterprises, Inc. v. Carole, Inc.* (1969)

_____

[9] Contrary to the assertion in the concurring and dissenting opinion (the concurrence/dissent), we do not hold or imply that the LWDA is bound by the terms of the settlement agreement between Starks and Vortex. Although the LWDA is bound, under *Arias*, *supra*, 46 Cal.4th at p. 986, by the Starks *judgment*, we express no view as to whether "the LWDA

23

274 Cal.App.2d 42, 44 [party's cashing of check constitutes acceptance of payment].) Under the general rules set forth above, therefore, the LWDA has forfeited its right to attack the Starks judgment on appeal. Because the LWDA could not challenge the judgment, its proxies or agents could not do so on its behalf. (See *Channel Lumber Co. v. Porter Simon* (2000) 78 Cal.App.4th 1222, 1228 [agent may not "do that which the principal cannot do personally"]; Rest.3d Agency, § 3.04, com. b, p. 204 ["[t]he capacity to do a legally consequential act by means of an agent is coextensive with the principal's capacity to do the act"].)

Despite the LWDA's acceptance of the Starks judgment proceeds, Herrera contends that he should be permitted to challenge the judgment because he, like Starks, is a "PAGA representative" who has been "deputized by the LWDA to file a PAGA action." Regardless of the power such deputizing may have given Herrera to "commence" his lawsuit (see § 2699.3, subd. (a)(2)(A)) or even to maintain it concurrently with the Starks action (see *Tan v. Grubhub, Inc.*, *supra*, 171 F.Supp.3d at p. 1013), it did not imbue him with the right to attack a judgment in another action when the government agency and real party for whom he purports to act—the LWDA—has accepted the benefits of that judgment and is itself precluded from making such an attack.

Although there are limited exceptions to the rule that one who accepts the benefits of a judgment waives the right to challenge it on appeal (see *Lee*, *supra*, 18 Cal.3d at pp. 114–116),

---

is deemed . . . to have accepted the terms of the underlying settlement agreement." (Conc. & dis. opn. *post*, at p. 3.)

24

Herrera does not assert that any exceptions apply here.[10] Indeed, although the LWDA's acceptance of the benefits of the judgment as a bar had been raised below and in Starks's respondent's brief on appeal, Herrera did not meaningfully respond to it in his opening or reply briefs. The closest Herrera comes to addressing this point is in his argument concerning the requirement that the trial court review and approve of a PAGA settlement. (See § 2699, subd. (*l*)(2).) He states that "[g]iven the statute's plain and unambiguous language, neither LWDA's check cashing nor an aggrieved employee's acceptance of money, can substitute for the review and order approving a PAGA settlement." We do not disagree with this statement; the trial court's statutory obligation to "review and approve any settlement of any civil action filed" under PAGA is independent of the LWDA's acceptance of the judgment proceeds. (*Ibid.*) Herrera's statement, however, does not address Starks's point that neither the LWDA, as the real party in interest, nor the LWDA's proxy (here, Herrera) can pursue an appeal to challenge

---

[10] The concurrence/dissent suggests that the LWDA should not be bound by its acceptance of the judgment proceeds because it is an understaffed government agency that relies on PAGA proceeds to operate. (Conc. & dis. opn. *post*, at p. 6, fn. 5 & pp. 6–9.) The rule that one who accepts the benefits of a judgment cannot attack that judgment, however, applies to governments, as well as private litigants (see *San Bernardino v. Riverside, supra,* 135 Cal. at p. 620), and to appellants who are "forced" to accept the proceeds due to their "financial situation" (see *Bulpitt v. Bulpitt* (1951) 107 Cal.App.2d 550, 553). We therefore decline to create an exception to the rule for resource-strapped parties lest the exception swallows the rule.

25

a judgment after the LWDA accepts the benefits of the judgment.[11]

Herrera did respond to a similar argument by Starks and Vortex that Herrera is barred from appealing the orders in the Starks action because the settlement check for his individual portion of the Starks settlement had been cashed. Herrera asserts that the general rule precluding appeal after accepting the benefits of a judgment does not apply under such circumstances because his wife deposited the settlement check without his knowledge or endorsement, and that he would be entitled to the $33.30 he received even if his appeal is unsuccessful. Even if these arguments had merit, which we do not decide here, as to the cashing of his personal settlement check, they do not apply to the LWDA's acceptance of the judgment proceeds.

---

[11] The concurrence/dissent asserts that a "logical consequence" of our conclusion is that "trial and appellate courts in future cases would be foreclosed from independently reviewing the substance of a PAGA settlement so long as the LWDA cashed its settlement check." (Conc. & dis. opn. *post*, at p. 6.) Not only does PAGA's requirement of judicial review of PAGA settlements preclude such foreclosure (§ 2699, subd. (*l*)(2)), but the court's review and approval of the settlement will necessarily occur prior to the entry of judgment and the payment and acceptance of the judgment proceeds. In this case, for example, the employer's obligation to disburse settlement funds was expressly conditioned upon the court's approval of the settlement; without that approval, the LWDA would never have received the funds. The concurrence/dissent's concern that parties will send settlement checks and the LWDA will accept them prior to the court's review and approval of the settlement agreement, therefore, is unfounded.

Herrera asserts, however, that, apart from his role as "a proxy for the [s]tate," he can challenge the Starks judgment because of his "dual status as an 'aggrieved employee.' " Herrera offers no authority for such a rule. Instead, he refers us only to the general principle that one has standing to appeal if he or she has been aggrieved by the judgment; that is, if his or her "rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) The judgment in a PAGA action, however, encompasses only civil penalties to which aggrieved employees have no right or interest. (See *Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court, supra*, 46 Cal.4th at p. 1003; *Medina v. Vander Poel*, *supra*, 523 B.R. at p. 827.) The "[c]ivil penalties" recoverable under PAGA "are an interest of the state," which may be recovered only by the state's labor law enforcement agencies or aggrieved employees when authorized under PAGA "to do so as agents of the state." (*ZB*, *supra*, 8 Cal.5th at p. 195; see also *Kim*, *supra*, 9 Cal.5th at p. 87 ["[t]here is no individual component to a PAGA action because ' "*every* PAGA action . . . is a representative action on behalf of the state" ' "].) Therefore, neither Herrera nor any other aggrieved employee has standing, as aggrieved employees, to challenge the Starks judgment.

Referring to *Kim*, the concurrence/dissent asserts that "binding Supreme Court precedent holds that Herrera has standing to challenge the Starks judgment *precisely because* he is an 'aggrieved employee' for the purposes of PAGA." (Conc. & dis. opn. *post*, at p. 2, fn. 2 & pp. 13–18.) *Kim* held that an employee who asserts both a PAGA claim and an individual non-PAGA claim against his employer and then settles the non-PAGA claim can continue to assert the PAGA

27

claim "as the state's authorized representative." (*Kim*, *supra*, 9 Cal.5th at p. 80.) Nothing in *Kim* suggests that one aggrieved employee can attack a judgment in another aggrieved employee's PAGA action after the LWDA has accepted the benefits of that judgment. Indeed, *Kim* reaffirms a foundation of our opinion that an aggrieved employee asserts "a PAGA claim *only* as the state's designated proxy." (*Id.* at p. 87; accord, *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 656.)

Because the LWDA is barred from attacking the Starks judgment by its acceptance of the benefits of the judgment, Herrera cannot attack the judgment in his capacity as the LWDA's proxy and agent; and he has no authority for attacking the judgment in any other capacity. We therefore reject his challenge to the Starks judgment and the order denying his motion to vacate the judgment.[12]

### D. *Summary Judgment in the Herrera Action Is Proper*

Vortex moved for summary judgment on three grounds: (1) The Starks settlement and judgment bar Herrera's lawsuit; (2) The doctrine of res judicata bars Herrera's lawsuit; and (3) Herrera lacks standing to prosecute the lawsuit because he cashed his personal settlement check from the Starks action. In support of the motion, Vortex submitted the Starks settlement agreement, the Starks judgment, and evidence that the LWDA cashed its settlement check, which Herrera did not dispute.

---

[12] We do not address the question whether Herrera would have had standing to attack the Starks judgment either in the trial court or on appeal if the LWDA had not accepted the benefits of the Starks judgment.

28

The trial court granted Vortex's motion on each ground. "Importantly," the court found that "the LWDA [a]pproved [t]he Starks [s]ettlement without objection" and accepted its terms "when it cashed the settlement check." Regarding the effect of the settlement and judgment in the Starks action, the court explained that it "covers current and former service technicians employed by Vortex at any time during the time period of June 30, 2014 to October 24, 2017 . . . , and [Herrera] admits he was employed as a service technician at Vortex from July 10, 2015 to November 11, 2015." Regarding the res judicata argument, the court stated that it "agrees with [Vortex's] argument to the effect that res judicata bars this action. The judgment in [the] Starks [action] is final and on the merits; both lawsuits involve the same cause of action; and [Herrera] is in privity with Starks as a nonparty 'aggrieved employee' covered by the Starks [s]ettlement and judgment."

" 'We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court.' [Citation.] 'Summary judgment is appropriate only "where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law." ' [Citation.]" (*Barenborg v. Sigma Alpha Epsilon Fraternity* (2019) 33 Cal.App.5th 70, 76.)

On appeal, Herrera challenges the court's res judicata determination on the ground that, as a result of his appeal, the Starks judgment is not final.[13] Herrera is correct that,

---

[13] In the trial court, Herrera asserted that res judicata did not apply in this case based on differences between his and Starks's PAGA claims and an alleged lack of privity among

"in California the rule is that the finality required to invoke the preclusive bar of res judicata is not achieved until an appeal from the trial court judgment has been exhausted or the time to appeal has expired." (*Franklin & Franklin v. 7-Eleven Owners for Fair Franchising* (2000) 85 Cal.App.4th 1168, 1174; see *Manco Contracting Co. (W.L.L.) v. Bezdikian* (2008) 45 Cal.4th 192, 202 [under California law, "a judgment is not final and conclusive between the parties when it is on appeal"].) The court's premature ruling on this ground, however, was harmless because we affirm the Starks judgment in this opinion and, once the remittitur issues, it will have the required finality. If we were to reverse the judgment in the Herrera action because the judgment in the Starks action was not yet final at the time the court ruled on Vortex's summary judgment motion, the trial court would simply make the same ruling after remand, this time grounded properly upon the finality of the Starks judgment. The waste of judicial resources and time following such a disposition is unjustifiable. (See *Haines v. Pigott* (1959) 174 Cal.App.2d 805, 807–808 [although res judicata did not apply at time of trial in first action because judgment in second action was not then final, after judgment in second action became final, the court dismissed the appeal of the first action where reversal "would be futile" because, "[o]n retrial, the plea of res judicata obviously would be made by plaintiffs and would have to be sustained"].)

 In any case, summary judgment is proper based on the LWDA's acceptance of the judgment proceeds. For the reasons discussed above, the state is bound by the Starks judgment

Starks and "aggrieved employees" as defined in Herrera's complaint. Herrera does not assert these arguments on appeal and, therefore, we do not consider them.

pursuant to its acceptance of the benefits of that judgment. The LWDA, like other parties, cannot "take the money *and* continue the lawsuit," either directly or through an agent. (*Myerchin v. Family Benefits, Inc.* (2008) 162 Cal.App.4th 1526, 1529, disapproved on other grounds in *Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, 929, fn. 6; Rest.3d Agency, § 3.04, com. b, p. 204.) Because Herrera's PAGA claim, in substance, is encompassed within the Starks judgment, its maintenance is barred by the LWDA's acceptance of the benefits of the Starks judgment. Summary judgment was therefore proper.

## DISPOSITION

The judgment in the Starks action (Los Angeles County Superior Court case No. BC590955) and the orders denying Herrera's motion to intervene and to vacate the judgment in that action are affirmed.

The judgment in the Herrera action (Los Angeles County Superior Court case No. BC644313) is affirmed.

Respondents are entitled to recover their costs on appeal. <u>CERTIFIED FOR PUBLICATION</u>.


ROTHSCHILD, P. J.

I concur:



CHANEY, J.

31

BENDIX, J., Concurring and Dissenting.

Two cases are before us in this consolidated appeal: *Starks v. Vortex Industries, Inc.* (Starks) and *Herrera v. Vortex Industries, Inc.* (Herrera). Both allege claims under the Labor Code Private Attorneys General Act of 2004 (PAGA) (Lab. Code,[1] § 2698 et seq.) Without informing the Herrera plaintiff of the terms of the settlement or an ex parte motion seeking trial court approval of that settlement, the Starks parties obtained a judgment in Starks based on the settlement. When the Herrera plaintiff learned of the settlement and judgment in Starks, he sought to intervene in Starks to contest the fairness of the settlement. The trial court denied that motion. The majority holds that the Herrera plaintiff's motion to intervene in Starks was untimely and therefore the trial court did not err in denying the motion to intervene. I concur.

The Herrera plaintiff also sought to vacate the judgment in Starks. The trial court denied that motion. Thereafter, Vortex moved for summary judgment in Herrera. The trial court granted Vortex's motion because inter alia the settlement in Starks was res judicata in Herrera. The majority affirms the trial court's denial of Herrera's motion to vacate the Starks judgment and the trial court's grant of summary judgment in Herrera. I respectfully dissent from both rulings.

By holding that the Labor and Workforce Development Agency's (LWDA's) cashing a settlement check precludes an aggrieved employee from contesting the fairness of a PAGA settlement, the majority effectively insulates PAGA settlements from judicial review. As the settlement before us demonstrates—

---

[1] Undesignated statutory citations are to the Labor Code.

so stealthily procured and lopsided as to merit court scrutiny—
judicial review is essential to achieving PAGA's enforcement of
the wage and hour laws.

## I.   The LWDA's Cashing of the Starks Settlement Check Does Not Preclude Herrera from Challenging the Fairness of That Settlement

PAGA settlements too often escape review because the
parties have no incentive to question the fairness of their own
settlement and the LWDA is too under-resourced meaningfully to
review every PAGA settlement for fairness.  Added to these
realities, there appears to be no California authority identifying
the standard a trial court applies to "review and approve any
settlement of any civil action filed pursuant to [PAGA]."  (§ 2699,
subd. (*l*)(2).)  This case presented an opportunity to provide
guidance to the trial courts on this statutory mandate.  Instead,
today's decision tacitly relegates the trial courts and appellate
courts to auditors searching for whether the LWDA cashed a
settlement check.

At first glance, the majority's holding could be viewed as
narrow—the LWDA simply waived its right to challenge the
Starks judgment on appeal, and this waiver is imputed to
Herrera.[2]  Actually, that reasoning is substantially broader.

---

[2] Near the conclusion of its analysis of the waiver issue,
the majority asserts that "neither Herrera nor any other
aggrieved employee has standing, as aggrieved employees, to
challenge the Starks judgment."  (See maj. opn. *ante*, at p. 27.)
As discussed *post*, part II.A, binding Supreme Court precedent
holds that Herrera has standing to challenge the Starks
judgment *precisely because* he is an "aggrieved employee" for the
purposes of PAGA.

2

To arrive at the conclusion that the LWDA waived an appellate challenge to the Starks judgment, the majority impliedly finds "an *unconditional, voluntary, and absolute acceptance* of the fruits of the judgment' " by the LWDA. (See *H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1363 (*H. D. Arnaiz*), italics added [noting this is a necessary element of a waiver]; see also maj. opn. *ante*, at p. 23 ["When the LWDA received the settlement agreement and cashed the check for its portion of the proceeds pursuant to the Starks judgment, it thereby accepted the benefits of the judgment and, so far as our record shows, did so unconditionally and without objection."].) Given that the sole basis of the Starks judgment is the settlement agreement, the implication behind the majority's reasoning is that the LWDA is deemed to have not only accepted the Starks judgment, but also to have accepted the terms of the underlying settlement agreement. (See 14 Cal.Jur.3d (2020) Contracts, § 93, p. 304 ["[T]he acceptance of the consideration offered with a proposal is an acceptance of the proposal, and a voluntary acceptance of the benefit of a transaction is equivalent to consent to all the obligations arising from it, so far as the facts are known or ought to be known to the person accepting," fns. omitted].) Although the majority eschews implying "that the LWDA is bound by the terms of the settlement agreement between Starks and Vortex," (see maj. opn. *ante*, at pp. 23–24, fn. 9), the Starks judgment is wholly derivative of that settlement. Thus, I cannot agree that the LWDA can be deemed to have accepted one but not the other.

How will trial and appellate courts apply the holding that the LWDA—which is " 'always the real party in interest' " in a

3

PAGA action[3]—is deemed to accept the terms of a settlement agreement merely by cashing a check?  The answer is simple: Once a trial or appellate court has proof that the LWDA cashed the settlement check, that is the end of each respective court's review.  The majority signals this is the appropriate interpretation of its opinion by stating that "the state *is bound by* the Starks judgment pursuant to its acceptance of the benefits of that judgment."  (See maj. opn. *ante*, at pp. 30–31, italics added.)

Whether one analogizes PAGA settlements to qui tam actions or class actions, (see *post*, part II.C), there is virtually no precedent limiting a trial or appellate court's review of settlements that are binding on absent persons essentially to putting on a green eyeshade and looking for a cancelled check. The impact of today's holding is to leave in place a settlement that awards $630,000 to Starks's lawyers for attorney fees and costs without any breakdown of tasks performed by each of Starks's several attorneys or a separate line item for costs, $10,000 to Starks as a service award, $18,750 to the LWDA, and a little more than $30 to each aggrieved employee, even though the trial court did not know how many aggrieved employees there were when it approved the settlement.  Under today's decision, we would be unable to review the fairness of a settlement agreement equally lacking in supporting documentation and awarding even less to the LWDA and aggrieved employees, so long as the LWDA received a copy of the settlement and cashed the check.

---

[3] (See *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73, 81 (*Kim*); see also *id.* at p. 86 ["[A] PAGA claim is an enforcement action between the LWDA and the employer, with the PAGA plaintiff acting on behalf of the government."].)

4

I do not mean to imply that the LWDA's cashing of a settlement check without objection is irrelevant to a trial or appellate court's review of the settlement.  A trial or appellate court may take the agency's lack of objection into consideration in assessing the fairness of the parties' proposal.  Further, the trial court may solicit an amicus brief from the LWDA if the court's independent review reveals concerns regarding one or more of the settlement's terms.[4]  On the other hand, holding that the agency's cashing of the check precludes further inquiry into the fairness of the settlement would, for the reasons I discuss below, contravene the legislative intent underlying PAGA.

The majority further reasons that "Herrera did not meaningfully respond" to Starks's claim that "the LWDA's acceptance of the benefits of the judgment [is] a bar" to his appeal.  (See maj. opn. *ante*, at p. 25.)  The majority states that "[t]he closest Herrera comes to addressing this point is in his argument . . . [that]:  'Given the statute's plain and unambiguous language, neither LWDA's check cashing nor an aggrieved employee's acceptance of money, can substitute for the review and order approving a PAGA settlement.' "  (*Ibid*.)  The majority rejects this argument as irrelevant on the ground that "the trial court's statutory obligation to 'review and approve any settlement of any civil action filed' under PAGA [(§ 2699, subd. (*l*)(2))] is independent of the LWDA's acceptance of the judgment proceeds."  (See maj. opn. *ante*, at p. 25.)

---

[4]  In fact, in the instant appeal, we took judicial notice of two such amici briefs in other cases in which the trial courts there solicited the LWDA's input in reviewing the PAGA settlements before them.

Yet, the majority has concluded that the state is "bound by the Starks judgment" simply because the state cashed a settlement check. (See maj. opn. *ante*, at pp. 30–31.) Thus, Herrera's argument was responsive to Starks's invocation of the waiver doctrine because he pointed out the logical consequence of finding a waiver under these facts, that is, as set forth above, trial and appellate courts in future cases would be foreclosed from independently reviewing the substance of a PAGA settlement so long as the LWDA cashed its settlement check.

Today's decision most likely will have unintended consequences. I acknowledge that the settlement agreement in Starks provided that the settlement funds would be disbursed to the LWDA within 15 days *after* the trial court approved the settlement. But, contrary to the majority's analysis, a settlement that would allow the LWDA to cash its check *before* trial court approval is not merely hypothetical. There is little downside for parties to agree to such a settlement. If the LWDA actually reviews that proposed settlement and determines it is unfair,[5] the agency would simply return the funds to avoid being bound by the agreement. If the LWDA instead retains the funds and does not object, then under the majority's reasoning, the trial court must approve the settlement because the sole real party in

---

[5] As set forth *post*, historically, the LWDA has been too under-resourced to review all PAGA settlements, and the agency relies on PAGA settlement checks to fund its own operations. (See § 2699, subd. (i) [providing that 75 percent of the civil penalties recovered by PAGA plaintiffs shall be paid to the LWDA "for enforcement of labor laws, including the administration of this part, and for education of employers and employees about their rights and responsibilities under this code . . . ."].)

6

interest has agreed to—and is bound by—the agreement, and the employer will thereafter pay the aggrieved employees their collective 25 percent share of the civil penalties. (See § 2699, subd. (i) ["[C]ivil penalties recovered by aggrieved employees shall be distributed as follows . . . 25 percent to the aggrieved employees."].)

I respectfully maintain that the majority's reasoning relies on an assumption that has not been supported. The assertion that the LWDA's cashing of a settlement check constitutes acceptance of the settlement agreement's terms presupposes that the LWDA has sufficient resources to be the arbiter of fairness of PAGA settlements. That supposition also ignores the legislative history as to why PAGA imbued private parties with a cause of action in the first place. (See *Kim*, *supra*, 9 Cal.5th at p. 83 [" 'In construing a statute, our task is to ascertain *the intent of the Legislature* so as to effectuate *the purpose of the enactment*,' " italics added].)

Our Supreme Court has observed that PAGA is intended to further the "state's interests in enforcing the Labor Code and in receiving the proceeds of civil penalties used to deter violations." (See *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383 (*Iskanian*).) Prior to PAGA's enactment, those interests were not being adequately served because there was a "shortage of government resources to pursue enforcement" of Labor Code violations. (See *id.* at p. 379.) Indeed, in enacting PAGA, the Legislature declared that "[s]taffing levels for state labor law enforcement agencies have, in general, declined over the last decade and are likely to fail to keep up with the growth of the labor market in the future." (Stats. 2003, ch. 906, § 1(c).) Consequently, "[a]s to criminal violations, local prosecutors often

7

directed their resources to other priorities," and "[t]he Labor Commissioner and other agencies were likewise hampered in their enforcement of civil penalties by inadequate funding and staffing constraints." (See *Kim*, *supra*, 9 Cal.5th at p. 81.) To overcome that obstacle, the Legislature created a statutory scheme intended to "augment the limited enforcement capability of the [LWDA] by empowering employees to enforce the Labor Code as representatives of the [LWDA]." (See *Iskanian*, *supra*, 59 Cal.4th at p. 383.)

Data from the Legislative Analyst's Office strongly suggest that the LWDA lacks the resources meaningfully to review proposed PAGA settlements. The Legislative Analyst's Office reported that in 2014, the LWDA had only one employee for reviewing notices employees sent to the agency before filing PAGA suits (PAGA notices).[6] (See Legis. Analyst, The 2016–17 Budget: Labor Code Private Attorneys General Act Resources (2016–17 Budget) p. 3 at <https://lao.ca.gov/Publications/Report/3403> [as of July 31, 2020], archived at <https://perma.cc/7Z49-HUVM>.) This employee was able to perform a "high-level review" of less than half of 6,307 PAGA notices that employees filed in 2014.

---

[6] "Before bringing a civil action for statutory penalties [under PAGA], an employee must . . . . give written notice of the alleged Labor Code violation to both the employer and the [LWDA][ ] . . . . If the agency notifies the employee and the employer that it does not intend to investigate[,] . . . or if the agency fails to respond [to the PAGA notice] within [a particular statutory timeframe], the employee may then bring a civil action against the employer." (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 981 (*Arias*).)

(See *ibid.*) "In 2014, less than half of the PAGA notices . . . ha[d] been reviewed or investigated since PAGA was implemented." (See *id.* at pp. 3–4.)

For the 2016–2017 fiscal year, the Governor sought funding for 10 new employees to review PAGA notices and proposed settlements of PAGA claims.[7] (See 2016–17 Budget, *supra*, at pp. 4–6.) The Governor anticipated that these 10 new positions would allow the LWDA, on an annual basis, to review about 900 additional PAGA notices and investigate 45 additional claims that it could not otherwise have investigated without more personnel. (See *id.* at p. 4.) The Legislative Analyst's Office recognized that "[p]roviding the additional funding and positions in the Governor's proposal likely would not be sufficient to review and investigate even a majority of PAGA notices, but would greatly expand LWDA's ability to meet the intent of the PAGA legislation." (See *id.* at pp. 6–7.)

The Legislature ultimately approved the Governor's request for funding these 10 positions. (See Legis. Analyst, The 2019–20 Budget: California Spending Plan (2019–20 Budget) pp. 7–8 at <https://lao.ca.gov/Publications/Report/4101#labor-programs> [as of August 3, 2020], archived at <https://perma.cc/76KR-QY4T>.) Further, in 2019, the Legislature authorized the creation of an additional twelve positions to "allow the Labor Commissioner's Office to investigate additional PAGA notices" and "review additional proposed settlements that result from private PAGA litigation." (See *ibid.*)

---

[7] In June 2016, PAGA was amended to require the parties to serve their proposed settlements on the LWDA. (See Stats. 2016, ch. 31, § 189, codified as Lab. Code, § 2699, subd. (*l*)(2).)

9

The Legislative Analyst's Office publications referenced herein demonstrate that although the Legislature has in recent years provided more funding to the LWDA to review and investigate PAGA notices and proposed settlements, the size of the team devoted to these endeavors still is small relative to the demand. That demand will increase as more PAGA claims will be filed in light of recent arbitration and class action precedents[8] that have made PAGA the favored vehicle for enforcing the wage and hour laws.[9]

---

[8] The United States Supreme Court's cases upholding arbitration clauses and class action waivers under the Federal Arbitration Act (FAA) have substantially limited resort to courts as forums for wage and hour claims. (See, e.g., *Iskanian, supra*, 59 Cal.4th at pp. 387–388 ["Th[e] pursuit of victim-specific relief by a party to an arbitration agreement on behalf of other parties to an arbitration agreement would be tantamount to a private class action . . . . Under [*AT&T Mobility LLC v.*] *Concepcion* [(2011) 563 U.S. 333], such an action could not be maintained in the face of a class waiver."].) A claim brought under PAGA, however, is typically not subject to the FAA's restrictions "because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the state," which is usually not a party to employers' arbitration agreements. (See *Iskanian*, at p. 386, italics omitted; see also *Bautista v. Fantasy Activewear, Inc.* (2020) 52 Cal.App.5th 650, 655 ["[A]rbitration agreements entered into before a[n employee-]plaintiff has been deputized for purposes of a PAGA representative action is [*sic*] not enforceable for purposes of the PAGA representative action"].)

[9] It appears there is not much publicly available data regarding the LWDA's operations vis-à-vis PAGA. The Legislative Analyst's Office, however, reported that from 2010 to

10

The majority cites two common-law doctrines to buttress its conclusion that the LWDA's cashing of the Starks settlement check precludes Herrera from challenging the fairness of the Starks settlement: (1) jurisprudence on the waiver of appellate rights; and (2) general agency principles. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 67, pp. 127–128 [indicating that the waiver doctrine was developed through a long line of California cases]; maj. opn. *ante*, at p. 24 [relying in part on the Restatement (Third) of Agency to hold that the LWDA's waiver is imputed to Herrera].) For the reasons discussed above, importing these common-law doctrines into PAGA would defeat the manifest purpose of PAGA—ensuring effective enforcement of the Labor Code through employee-initiated actions to supplement enforcement by an under-resourced LWDA.

The majority's analysis thus contravenes the maxim of *cessante ratione legis cessat lex ipsa*, which provides that judicial alteration of a common-law rule is appropriate when, "because of statutory change, the reason for the rule no longer holds . . . ." (See Scalia & Garner, Reading Law (2012) pp. 220, 319; *Katz v. Walkinshaw* (1903) 141 Cal. 116, 123–124 [" ' "*Cessante ratione, cessat ipsa lex*." This means that no law can survive the reasons on which it is founded. . . . If the reasons on which a law rests are overborne by opposing reasons, which, in the progress of society, gain controlling force, the old law, though still good as an

---

2014, the number of PAGA notices filed with the agency increased from 4,430 to 6,307 notices. (See 2016–17 Budget, *supra*, at p. 3.) The Legislative Analyst's Office further reported that from 2014 to 2015, the LWDA received just under 600 payments for PAGA claims (i.e., close to 10 percent of the PAGA notices filed in 2014). (See *ibid.*)

abstract principle, and good in its application to some circumstances, must cease to apply or to be a controlling principle to the new circumstances.' "].)  It follows that the aforementioned common-law doctrines are inapplicable given the terms of—and policies served by—PAGA, and that the LWDA's cashing of the settlement check alone should not bar Herrera from contesting the terms of the settlement agreement.

The majority counters that "[t]he rule that one who accepts the benefits of a judgment cannot attack that judgment, however, applies to governments, as well as private litigants [citation], and to appellants who are 'forced' to accept the proceeds due to their 'financial situation' [citation]."  (Maj. opn. *ante*, at p. 25, fn. 10.)  The majority correctly observes that the waiver doctrine has, in some cases, been applied to under-resourced private parties and governmental entities.  It just does not apply here where to do so would be inconsistent with the legislative intent behind PAGA.  This is especially true given "the unique nature of a PAGA claim as a qui tam type action."[10]  (See *Correia v. NB Baker Electric, Inc.* (2019) 32 Cal.App.5th 602, 620).

---

[10]  Neither of the cases the majority cites is a qui tam type action.  (See *San Bernardino v. Riverside* (1902) 135 Cal. 618, 619 [the counties themselves were the only litigants to the action]; *Bulpitt v. Bulpitt* (1951) 107 Cal.App.2d 550, 551 [divorce action].)

12

II. **Herrera Had Standing to Challenge the Fairness of the Starks Settlement and He Did Not Waive the Right to Do So; Without Having Key Information, the Trial Court Erred in Approving a Settlement Having the Earmarks of Unfairness**

Vortex and Starks raise two additional arguments they contend either would support dismissal of Herrera's appeal from the order denying his motion to vacate the Starks judgment, or support affirming that order. First, they contend Herrera waived the right to appeal that ruling, or lacked standing to do so, because the settlement administrator sent a check to Herrera that was later deposited. Starks also argues that Herrera lacks appellate standing to challenge the Starks judgment because he is not a "party aggrieved" for the purposes of Code of Civil Procedure section 902. Second, the Starks parties contend the information they provided to the trial court supported its approval of that settlement.

Because I respectfully submit that neither argument is well-founded, the trial court should have vacated the Starks judgment. Further, as discussed *post*, part III, because the order granting summary judgment against Herrera in his own case depended on the validity of the Starks judgment and on Vortex's erroneous assertion that Herrera lacked standing to bring his PAGA claims, I would reverse the judgment entered in Herrera as well.

13

**A. Herrera Has Standing Under Kim v. Reins Despite the Cashing of the Settlement Check and He Is a "Party Aggrieved" for the Purposes of Appellate Standing**

PAGA authorizes an "aggrieved employee" to bring a PAGA claim for Labor Code violations, (see *Arias*, *supra*, 46 Cal.4th at p. 980), and defines that operative term as "any person who was employed by the alleged violator and against whom one or more of the alleged violations was committed." (See § 2699, subd. (c).) With regard to its challenge to Herrera's standing, Vortex claims Herrera lost his status as an "aggrieved employee" for purposes of bringing a PAGA claim when he purportedly deposited a check for his portion of the proceeds of the settlement agreement in Starks.[11] Vortex's argument rests on the assumption that to remain an aggrieved employee, Herrera cannot have previously received any relief for the Labor Code violations he allegedly suffered.

---

[11] As set forth in part II.B, *post*, in response to Starks's and Vortex's motion to dismiss Herrera's appeal of orders entered in the Starks action, Herrera offered uncontroverted evidence showing that he did not actually deposit that check. Instead, the uncontroverted evidence was that unbeknownst to him, his wife deposited the check, which was not endorsed. The uncontroverted evidence also demonstrated that in his declaration offered in opposition to the motion to dismiss the appeal, Herrera has, in effect, offered to return the approximately $33 in settlement funds if doing so were necessary to prosecuting his appeal. For the reasons discussed in this section, even assuming *arguendo* that Herrera did personally deposit the check, he would still have standing to maintain suit under PAGA.

14

Our Supreme Court's recent decision in *Kim* disposes of Vortex's argument. In *Kim*, the plaintiff-employee brought suit against his employer for individual, class, and PAGA claims for wage and hour violations, all of which arose out of his employer's decision to classify him as exempt from state overtime requirements. (*Kim, supra,* 9 Cal.5th at p. 82.) The trial court granted the employer's motion to compel arbitration of the plaintiff's individual claims, granted the employer's motion to dismiss the class claims, and stayed the PAGA claim and claim for injunctive relief under Business and Professions Code section 17200. (*Ibid.*) The employee thereafter settled and dismissed his individual claims, leaving only the PAGA claim for resolution. (*Ibid.*) Subsequently, the employer moved for summary adjudication on the PAGA claim, arguing the plaintiff was no longer an " 'aggrieved employee' " because he settled and dismissed his individual causes of action. (See *ibid.*) The trial court agreed, granted the motion, and later dismissed the action in its entirety. (*Id.* at pp. 82–83 & fn. 3.)

The Court of Appeal affirmed the trial court's judgment, and the Supreme Court reversed, holding that "employees [do not] lose standing to pursue a claim under [PAGA] if they settle and dismiss their individual claims for Labor Code violations." (See *Kim, supra,* 9 Cal.5th at pp. 80–89, 93.) Of particular relevance here, the high court rejected the employer's contention that the employee was "no longer an 'aggrieved employee' because he accepted compensation for his injury," reasoning that "[t]he Legislature defined PAGA standing in terms of violations, not injury." (See *id.* at p. 84.)

The *Kim* Court explained that the employee in that case "became an aggrieved employee, and had PAGA standing, when

15

one or more Labor Code violations were committed against him.  (See § 2699(c).)  Settlement did not nullify these violations" because "[t]he *remedy* for a Labor Code violation, through settlement or other means, is distinct from the *fact* of the violation itself."  (See *Kim*, *supra*, 9 Cal.5th at p. 84.)  Put differently, "[t]he plain language of section 2699(c) has only two requirements for PAGA standing"—the plaintiff is someone who " 'was employed by the alleged violator' and 'against whom one or more of the alleged violations was committed' "; the statute does not require a plaintiff to "claim that *any* economic injury resulted from the alleged violations."[12]  (See *Kim*, at pp. 83–84.)

Vortex conceded below that it employed Herrera as a service technician from July 10, 2015 to November 11, 2015. Herrera alleged in his complaint that he suffered certain Labor Code violations during his employment at Vortex.  In fact, Vortex admitted in its appellate briefing that before the settlement check was sent to Herrera, "[he] was a non-party 'aggrieved employee.' "  In sum, Herrera was an "aggrieved employee" under PAGA, regardless of whether "he accepted compensation for his

---

[12] The Supreme Court also noted that imposing an unredressed injury requirement "would be problematic for PAGA suits to enforce the many Labor Code statutes that do not create a private right to sue."  (See *Kim*, *supra*, 9 Cal.5th at p. 89.)  The high court further reasoned "[n]othing in the legislative history suggests the Legislature intended to make PAGA standing dependent on the existence of an unredressed injury . . . ."  (See *id.* at p. 90.)

16

injury," (see *Kim, supra*, 9 Cal.5th at p. 84),[13] and thus had standing to challenge the fairness of the Starks settlement.

The majority observes that *Kim* supports its reasoning because *Kim* recognizes that PAGA suits are representative actions. I acknowledge that *Kim*, as well as the other precedents from our high court, recognize this principle. Where I part company with my colleagues' interpretation of *Kim* is that they appear to conflate two doctrinally separate concepts: waiver and PAGA standing. (See maj. opn. *ante*, at pp. 27–28.) Specifically, after concluding that "neither Herrera nor any other aggrieved employee has standing, as aggrieved employees, to challenge the

---

[13] In its supplemental briefing addressing the impact of the *Kim* decision on the appeals before us, Vortex asserts *Kim* is distinguishable because: (1) "neither Herrera nor Starks asserted any individual claims against Vortex" (i.e., non-PAGA claims for Labor Code violations); (2) the settlement agreement from Starks "encompassed all of the alleged Labor Code violations asserted by Herrera, all of the aggrieved employees alleged by Herrera, and the entire time period alleged by Herrera," and excluded "any individual claims of Starks or any other aggrieved employee"; (3) the LWDA did not object to the settlement agreement, which it had been provided prior to the approval hearing; (4) the LWDA cashed its settlement check; (5) "Herrera cashed his settlement check for his share of the PAGA penalties"; and (6) the LWDA, Herrera, and the other aggrieved employees never returned the settlement funds to Vortex or placed that money into an escrow account. These distinctions have no bearing on whether Herrera satisfied the only two elements a plaintiff must meet in order to bring a PAGA representative claim—that he was employed by the alleged violator and was subjected to one or more Labor Code violations. (See *Kim, supra*, 9 Cal.5th at pp. 83–84.) As set forth herein, Herrera satisfied both those elements.

17

Starks judgment" (*id.* at p. 27), the majority concludes:  "Nothing in *Kim* suggests that one aggrieved employee can attack a judgment in another aggrieved employee's PAGA action *after the LWDA has accepted the benefits of that judgment.*"  (See *id.*, at p. 28, italics added.)  *Kim*, however, did not address common-law waiver.  *Kim* analyzed the effect of being already compensated for Labor Code violations on an employee's standing to bring a PAGA claim, and concluded that the employee still had standing to do so because he was defendant's employee and suffered a Labor Code violation.  (See *Kim*, *supra*, 9 Cal.5th at pp. 80, 84 ["Do employees lose standing to pursue a claim under [PAGA] if they settle and dismiss their individual claims for Labor Code violations?  We conclude the answer is no. * * * Kim was employed by Reins and alleged that he personally suffered at least one Labor Code violation on which the PAGA claim is based. Kim is thus an 'aggrieved employee' with standing to pursue penalties on the state's behalf."].)  Herrera satisfied these two elements of PAGA standing.

Starks makes a separate standing argument:  Herrera lacks appellate standing to challenge the Starks judgment because Herrera was not a party of record in that action and he is not personally "aggrieved" by that judgment.  (See also Code Civ. Proc., § 902 ["Any party aggrieved may appeal in the cases prescribed in this title."].)  The first argument fails because "[a] person not a party to the action as originally commenced or tried may make himself or herself party to the *record*, subsequent to judgment in the action, by moving to vacate," as Herrera did here.  (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 26, p. 89.)

18

The second argument also fails. Starks does not dispute that PAGA authorized Herrera—as it did Starks—to represent the LWDA regarding Labor Code claims virtually identical to those raised by Starks or that the Starks judgment, if left intact, would preclude Herrera's PAGA representative action. (See *Arias*, *supra*, 46 Cal.4th at p. 985 ["[T]he judgment in [a representative action brought by an aggrieved employee under PAGA] is binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee not a party to the proceeding."].) Accordingly, Herrera is "aggrieved" for the purposes of Code of Civil Procedure section 902. (See *In re Carissa G.* (1999) 76 Cal.App.4th 731, 736 ["Generally, '[a] person who would be bound by the doctrine of res judicata, whether or not a party of record, is a party sufficiently aggrieved to entitle him to appeal. [Citations.]' "].)

**B. The Evidence Does Not Establish That Herrera Clearly and Unmistakably Waived the Right to Pursue His PAGA Claims**

Starks contends Herrera waived his right to appeal the orders denying Herrera's motions in Starks by "accept[ing] the benefits of the judgment" entered therein. Starks asserts that "just one day after [Herrera's] motions to intervene and vacate the judgment were denied, his wife deposited his share of the proceeds from the judgment into his bank account, and he has neither returned the money nor placed the money in a trust account to this day." Starks further maintains that "even when his acceptance of the proceeds of the judgment were [*sic*] called out" in Vortex's motion for summary judgment filed in Herrera, "he took no action that did anything to undermine the conclusion

19

that he was accepting the proceeds of the judgment."[14]  The parties do not dispute that the amount of the check in question was $33.30.

The evidence does not support a finding that Mrs. Herrera's deposit of the settlement check sent to her husband, which was not endorsed, effects a waiver of her husband's appeal from the denial of his motion to vacate the judgment in Starks. Mrs. Herrera declares that when she deposited the check in her husband's bank account via an automatic teller machine, she was unaware of the Starks action and had not informed her husband of the existence of the check.[15]  Mr. Herrera also attests that he would not have deposited the check had he personally received it. Starks does not argue that Mrs. Herrera's conduct may be imputed to her husband simply because they are married.  Thus, when Mrs. Herrera deposited the check, her husband did not

---

[14] Before the instant appeals were fully briefed, Starks asserted this waiver theory in a motion to dismiss Herrera's appeal of the Starks action, and also offered certain declarations to support his motion.  Vortex later joined Starks's motion. Herrera filed an opposition, along with his own and his wife's declarations.  Presiding Justice Rothschild summarily denied the motion to dismiss.

[15] We may consider evidence that was not included in the appellate record because Starks's motion to dismiss relied upon extrinsic evidence.  (See *H. D. Arnaiz, supra*, 96 Cal.App.4th at pp. 1361–1364 & fn. 2 [considering declarations offered by appellant when determining whether the party waived its appellate rights]; cf. Cal. Rules of Court, rule 8.54(a)(2) [providing that motions to dismiss an appeal may be "based on matters outside the record," including "declarations or other supporting evidence"].)

voluntarily accept the benefits of the judgment. (See *H. D. Arnaiz*, *supra*, 96 Cal.App.4th at p. 1362.)

Herrera's mere retention of the proceeds of the check in his bank account does not amount to a clear and unmistakable acceptance of the fruits of the judgment, which is a sine qua non to a finding of waiver. (See *H. D. Arnaiz*, *supra*, 96 Cal.App.4th at p. 1364.) Herrera declares that he has not dissipated the proceeds of the check, but has instead chosen to retain the funds in his personal bank account. He has expressed his willingness to return the funds to Vortex if doing so were necessary to pursue his appeal in Starks. Although it would have been better practice to return the funds,[16] the mere fact that Herrera retained the funds in his personal bank account does not support a finding of waiver. (See *H. D. Arnaiz*, *supra*, 96 Cal.App.4th at p. 1363 ["Courts have found no waiver of the right to appeal where the benefits of the judgment are retained, but not used by the appellant."].)

Starks's evidence does not controvert Mr. and Mrs. Herrera's declarations, and therefore cannot support a finding that Mr. Herrera waived his appellate rights by " ' " 'unconditional[ly], voluntar[ily], and absolute[ly]' " accept[ing] . . . the fruits of the judgment' " or " 'demonstrat[ing] a

---

[16] Herrera's counsel erroneously contends that, "[i]f Herrera prevails on appeal, Herrera would likely receive more in penalties," thus suggesting that Herrera would still be entitled to the $33.30 even if we reversed the trial court's order denying his motion to vacate the Starks judgment. Herrera's right to the settlement proceeds stems from the Starks judgment and the underlying settlement agreement. Thus, if that judgment were vacated, Herrera would not be able to keep the funds.

21

clear and unmistakable acquiescence in . . . the fruits of ' " it. (See *H. D. Arnaiz, supra*, 96 Cal.App.4th at p. 1364.) Starks's evidence merely establishes that the settlement administrator sent Herrera the settlement check; someone deposited the check even though it had not been endorsed; and Herrera did not contact the settlement administrator, Vortex's counsel, or Starks's counsel to discuss the circumstances under which (a) the check had been deposited or (b) the proceeds were being retained by him.[17]

### C. The Trial Court Did Not Have the Information Necessary to Review and Approve the Starks Settlement

In PAGA, the Legislature has given trial courts a gatekeeping function, that is, to review and approve PAGA settlements. As noted at the outset of this dissent, there is no other entity or person with either the incentive or the staffing

---

[17] Starks's counsel attests, "I understand that Adolfo Herrera deposited the check sent to him pursuant to the settlement and judgment in *Starks v. Vortex Industries, Inc.*," and the settlement administrator declares that "[n]either Mr. Herrera, nor his counsel, indicated to [the administrator] that the proceeds *deposited by Herrera* were being held in trust . . . ." (Italics added.) Yet, neither statement controverts the Herreras' testimony that Mrs. Herrera actually deposited the check, nor did Starks's counsel or the settlement administrator demonstrate that they had any personal knowledge regarding the circumstances under which the check was deposited. (See Evid. Code, § 702 ["[T]he testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter[.]"].)

22

wherewithal to review a PAGA settlement for fairness, at least at the trial level. PAGA itself does not set forth a standard governing a trial court's review of PAGA settlements. Other representative and collective actions, however, are instructive. Courts have applied the fair, adequate, and reasonable test in reviewing settlements in class actions[18] and qui tam cases.[19]

---

[18] (See, e.g., *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 407 (*Munoz*) [noting that an appellate court must assess whether the trial court abused its discretion in determining that the proposed class action settlement was " 'fair, adequate and reasonable' "]; *Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1800–1801 & fn. 7 [" ' " '[T]o prevent fraud, collusion or unfairness to the class, the settlement or dismissal of a class action requires court approval.' " ' [Citations.] The court must determine the settlement is fair, adequate, and reasonable."]; see also *O'Connor v. Uber Technologies, Inc.* (N.D.Cal. 2016) 201 F.Supp.3d 1110, 1134–1135 [rejecting a proposed class action settlement that covered a PAGA claim in part because the settlement was not "fair, adequate and reasonable" in "view of the purposes and policies of [PAGA]"].)

[19] (See, e.g., *U.S. ex rel. Nudelman v. International Rehabilitation Associates, Inc.* (E.D.Pa. May 14, 2004, No. Civ.A. 00-1837) 2004 WL 1091032, at p. *1, fn. 1 [concluding that the federal False Claims Act's legislative history demonstrates that proposed settlements of such actions must be assessed under the fair, adequate, and reasonable standard "used in reviewing settlements in class actions"]; *U.S. ex rel. Resnick v. Weill Medical College of Cornell University* (S.D.N.Y. Mar. 5, 2009, No. 04 Civ. 3088) 2009 WL 637137, at p. *2 [following *Nudelman*'s approach].)

Given the proliferation of PAGA cases in the trial courts,[20] the Legislature should consider whether trial courts need more guidance for their review and approval of PAGA settlements.

I respectfully note that the majority's opinion does not address key facts about the settlement agreement. They reflect Starks's and Vortex's apparently cozy relationship and the potential unfairness of the settlement. For example, there is no discussion of Vortex's and Starks's failure to provide the trial court with information concerning the value of the claims released by the agreement, including the number of employees and pay periods covered by a settlement giving Starks a $10,000 service award and all aggrieved employees a little more than $30 each.[21] Nor did the Starks parties provide the trial court with

Admittedly, there is "a split of authority" regarding whether the fair, adequate, and reasonable standard governing class actions should also apply to proposed settlements of qui tam actions brought under the federal False Claims Act. (See *United States ex rel. Shepard v. Grand Junction Regional Airport Authority* (D.Colo. Feb. 27, 2017, No. 13-cv-00736) 2017 WL 749070, at pp. *1–2.) The principal rationale for employing a more deferential standard to settlements of qui tam actions is that " '[t]he [c]ourt need not protect the [g]overnment from itself by closely scrutinizing settlements *it negotiates* at an arm's length with the [d]efendant.' " (See *id.* at p. *3, italics added.) This rationale is inapposite in the PAGA context because the LWDA does not typically play a role in negotiating settlements of PAGA cases.

[20] (See *ante*, fn. 8.)

[21] (See also *Munoz, supra*, 186 Cal.App.4th at pp. 407–408 [" ' " 'The most important factor [under the fair, adequate, and reasonable standard] is the strength of the case for plaintiffs on

24

the modicum of information needed for a lodestar calculation when they championed a settlement awarding Starks's several attorneys $630,000 for attorney fees and costs. The trial court had no breakdown of tasks by hour and attorney performing each task;[22] the award did not even break down fees and costs.

These additional facts underscore that on its face, the settlement should have inspired skepticism and further inquiry. Because the trial court approved the settlement without having the most fundamental information for evaluating the fairness of the Starks settlement, the trial court failed to discharge its statutory obligation to "review and approve" the agreement. (See § 2699, subd. (*l*)(2); see also *Williams v. Superior Court* (2017) 3 Cal.5th 531, 549 ["PAGA settlements are subject to trial court review and approval, ensuring that any negotiated resolution is *fair* to those affected," italics added].)

For all the above reasons, I would reverse the trial court's order denying Herrera's motion to vacate the Starks judgment, and instruct the trial court to vacate that judgment and conduct further proceedings to determine whether the settlement agreement was fair, adequate, and reasonable.

---

the merits, balanced against the amount offered in settlement.' " ' [Citation.] While the court ' "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case," ' it ' "must eschew any rubber stamp approval in favor of an independent evaluation." ' "].)

[22] (See also *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1325 ["[C]ounsel [has] the burden of proving the reasonable number of hours they devoted to the litigation, whether through declarations or redacted or unredacted timesheets or billing records."].)

25

**III.** **Because the Starks Judgment Should Be Vacated, It Is Not Res Judicata in Herrera, and Neither the LWDA's Cashing of the Starks Settlement Check Nor the Cashing of Herrera's Settlement Check Supports Granting Summary Judgment in the Herrera Case**

Vortex moved for summary judgment in the Herrera action on three grounds: (1) The Starks judgment "bars" Herrera's lawsuit; (2) "the doctrine of res judicata bars Herrera's lawsuit"; and (3) "[Herrera] does not have standing to prosecute this lawsuit." In granting that motion, the trial court adopted these three arguments, and also held that the LWDA accepted the terms of the settlement by cashing its check.

The majority upholds the entry of summary judgment in Herrera essentially for two reasons: (1) The trial court's premature invocation of the res judicata doctrine was harmless because the majority rejects Herrera's challenges to the Starks judgment; and (2) Herrera could not maintain his own PAGA suit because he and the LWDA are bound by the Starks judgment. For the reasons discussed *ante*, part II.C, the trial court erred in denying Herrera's motion to vacate the Starks judgment. I also disagree with the conclusion that the LWDA's failure to challenge the settlement agreement signifies that it—and, by extension, Herrera—should be bound by the Starks judgment and the underlying agreement. (See *ante*, part I.) Based on the reasoning of this dissent, three out of four of the trial court's bases for granting summary judgment, and all of the majority opinion's reasons for affirming that ruling, fail. (Cf. *Romadka v. Hoge* (1991) 232 Cal.App.3d 1231, 1233–1234, 1237–1238 [reversing an order dismissing an action on res judicata grounds

26

because the trial court in the prior action erred in denying a motion to vacate the underlying judgment therein].) The sole remaining ground for the trial court's grant of Vortex's summary judgment motion is unpersuasive because as previously detailed, even if Herrera himself had cashed the check, that would not deprive him of standing to pursue his PAGA claims. (See *ante*, part II.A.) For all the above reasons, I would reverse the judgment entered in Herrera and remand for further proceedings.

## IV. Herrera's Motion to Intervene in Starks Was Too Late

I concur in affirming the trial court's denial of Herrera's motion to intervene on the basis of untimeliness. I do so because Herrera's counsel was present when Vortex's attorney informed the trial court during a September 27, 2017 status conference that the parties in Starks were engaged in "ongoing" settlement discussions. Herrera did not seek to intervene at that time, despite the potential res judicata consequences if those discussions produced a settlement. Indeed, the trial court intimated at that status conference that a settlement of the Starks action would have a preclusive effect on Herrera's claims. I agree with the majority that as of the date of the September 27, 2017 status conference, the Starks action posed a measurable risk to Herrera's interests such that he should have moved to intervene at or about that time, and not 47 days later.[23]

---

[23] My concurrence in the majority's holding that Herrera's motion to intervene was untimely does not impact the timeliness of Herrera's motion to vacate the Starks judgment. Neither Starks nor Vortex contests the timeliness of Herrera's motion to vacate the Starks judgment. Nor is it apparent that any such

I disagree, however, with the majority's suggestion that the administrative obstacles attendant with reversing the trial court's approval of the settlement are solely attributable to Herrera's "lack of diligence." (See maj. opn. *ante*, at p. 17.) The record does not support that conclusion, given the Starks parties sought to keep Herrera in the dark until judgment was entered and the settlement funds were already being disbursed. The majority acknowledges that: The parties in Starks sought approval on an ex parte basis with no notice to Herrera's counsel; the trial court approved of Starks's and Vortex's request not to inform Herrera of the settlement; and the settlement agreement required that disbursements of settlement funds be made to (a) the LWDA, *Starks, and his attorneys* no later than 15 days after the issuance of the trial court's approval order; and (b) the

challenge would have been meritorious given that Herrera filed his motion to vacate within 180 days of the entry of the judgment and he was never served with a copy of entry of judgment in Starks. (See Code Civ. Proc., § 663a, subd. (a)(2) ["A party intending to make a motion to set aside and vacate a judgment, as described in [Code of Civil Procedure] Section 663, shall file with the clerk and serve upon the adverse party a notice of his or her intention . . . [¶] . . . [¶] [w]ithin 15 days of the date of mailing of notice of entry of judgment by the clerk of the court[,] . . . or service upon him or her by any party of written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earliest."]; 4 Thomas & Moore, Cal. Civ. Prac. Proc. (2007) § 29:48, p. 29-46 ["The 15-day time limitation [imposed by Civil Procedure Code section 663a, subdivision (a)(2)] applies only to those who are parties of record when the judgment is entered, and not to persons who become parties by filing a motion to vacate."].)

28

aggrieved employees for their share of the PAGA and section 558 penalties no later than 45 days after the court's approval of the settlement, *irrespective of whether there would be an appeal or any other challenge to the forthcoming judgment*. The reasonable conclusion to be drawn from the record is that the trial court, Vortex, and Starks sought to prevent Herrera from raising any objection to the settlement agreement before it was fully performed—not, as the majority suggests, that Herrera was lying in wait to " 'knock the props out from' the parties' reliance on the agreement." (See maj. opn. *ante*, at p. 16.)

In closing, the majority correctly notes the logistical difficulties of undoing a settlement whose proceeds have been long disbursed. Any such impracticality, however, is of Starks's and Vortex's own making.[24]

---

[24] The majority notes that "[t]he only order imposing a stay in the Herrera action, so far as our record reveals, is dated September 27, 2017," and that, "[a]lthough a partial and temporary discovery stay was ordered in the Starks action prior to the filing of Herrera's complaint, it did not apply to the Herrera action." (See maj. opn. *ante*, at p. 6, fn. 3.)

Although these statements are true, there are other relevant record citations. The trial court remarked at the September 27, 2017 hearing that it was "going *to continue* the stay [in Herrera] until November 1." (Italics added.) The trial court presumably was aware of the procedural posture of its own case. The trial court's comments suggest that it may have stayed the Herrera action at some point prior to the September 27, 2017 hearing. I therefore dissent from today's opinion to the extent it reads the record to conclude that Herrera's counsel was remiss in prosecuting the Herrera action.

29

Although the majority notes that Herrera waited three weeks to move to intervene in Starks, in fact, Herrera filed an objection to the settlement on November 1, 2017, a *little over one week* after the trial court issued the Starks judgment. The record is clear that Starks and Vortex knew as of November 1, 2017 that Herrera was contesting the fairness of the settlement agreement. Starks and Vortex thus were not only aware of the risk that Herrera would challenge the settlement agreement after its approval, but also that an appeal could be filed after at least the LWDA, Starks, and Starks's attorneys had received settlement funds.

I recognize that the facts and unusual procedural presentation of this consolidated appeal do not present an elegant denouement. I agree with my colleagues that settlements should be encouraged and that allowing someone to upset a settlement after entry of judgment can produce its own mischief. Under the circumstances of the consolidated appeal before us however, as between, on the one hand, the impracticalities of undoing a settlement approved in derogation of the trial court's obligation to review PAGA settlements for fairness and designed to distribute the bulk of the settlement funds even if an appeal is in the offing, and, on the other, affirming judgments based on such a settlement, the former is the just course, impracticality notwithstanding.


                                                    BENDIX, J.